UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
               :
ROBERT LOWINGER,              :
               :
            Plaintiff,         :
               :        23 Civ. 9243 (JPC)
     -v-               :
               :        OPINION AND ORDER OF
               :        TRANSFER
ROCKET ONE CAPITAL, LLC *et al.*, :
               :
            Defendants.    :
               :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Robert Lowinger instituted this action pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), seeking to disgorge profits he contends Defendants Rocket One Capital, LLC ("Rocket One"), Michael Shvartsman, and Bruce Garelick[1] made off insider trades in securities of Defendant Digital World Acquisition Corp. ("DWAC"). Currently pending before the Court are Rocket One and Shvartsman's motion to dismiss for failure to state a claim, motion to dismiss for improper venue, and alternative motion to transfer venue to the Southern District of Florida. Garelick joins the latter two motions. DWAC additionally moves to dismiss for failure to state a claim. For the reasons that follow, the Court grants the motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and denies the motion to dismiss for improper venue as moot. The motions to dismiss for failure to state a claim will be decided by the transferee court.

---

[1] While the Complaint spells Garelick's last name as "Garelik," *see* Dkt. 1 ("Compl.") at 1, a review of other documents filed by Plaintiff illustrates that this was an error.

## I. Background

A.   **Factual Allegations**[2]

Given the relatively limited scope of this decision, the Court only recites those facts necessary to its transfer analysis. Plaintiff is a DWAC shareholder and a resident of Queens, New York. Compl. ¶ 1; Abraham Decl., Exh. F ("Lowinger Decl.") ¶ 2. DWAC is a special purpose acquisition company ("SPAC") that "maintains its principal executive offices in Miami, Florida and has securities registered with the [Securities and Exchange Commission ('SEC')]." Compl. ¶¶ 3, 8. Patrick Orlando is DWAC's chairman and Chief Executive Officer ("CEO"). *Id.* ¶ 9. As a SPAC, DWAC "was created to raise money from the investing public for the purpose of acquiring another operating company." *Id.* ¶ 8. Rocket One "is a Florida limited liability company having its principal office located in Miami, Florida . . . [that] describes itself as providing venture capital and private equity through hands-on investments." *Id.* ¶ 4. Shvartsman, a resident of Sunny Isles Beach, Florida, is Rocket One's CEO. *Id.* ¶ 5. Plaintiff alleges that Garelick was a resident of Fort Lauderdale, Florida, and "at the times relevant to this action . . . served as Rocket One's chief investment officer." *Id.* ¶ 6. As discussed in more detail below, *see infra* n.6, Plaintiff contends in his briefing that Garelick has since moved to Providence, Rhode Island. *See* Dkt. 32 ("Opposition") at 15 (citing Abraham Decl., Exh. E ("Garelick Decl.")).

The Complaint alleges that "Shvartsman and Rocket One agreed to make a Founders Class investment in DWAC" in June 2021. Compl. ¶ 9. Garelick was nominated to DWAC's board of directors the following month and officially joined the board on September 2, 2021. *Id.* ¶¶ 10, 14.

---

[2] This section is drawn primarily from the allegations in the Complaint and documents provided by Plaintiff, *see* Dkt. 33 ("Abraham Decl."). *See NetSoc, LLC v. LinkedIn Corp.*, Nos. 18 Civ. 12215 (RA), 18 Civ. 12267 (RA), 2020 WL 209864, at *1 n.3 (S.D.N.Y. Jan. 14, 2020) ("When reviewing a § 1404(a) motion, the Court may also consider materials outside of the pleadings.").

Plaintiff alleges that Garelick's position on DWAC's board "gave him access to material non-public information" about the company. *Id.* ¶ 10. On September 3, 2021—a day after Garelick officially joined DWAC's board—DWAC "sold 28,750,000 Units at $10.00 apiece with each Unit consisting of one share of Class A common stock . . . and one-half of one warrant exercisable for one share of Common Stock at an exercise price of $11.50" as part of its initial public offering, although DWAC did not identify its acquiring target at the time. *Id.* ¶ 15. "Between September 3 and 23, 2021, Garelick purchased 5,320 Units." *Id.* ¶ 16.

Much of this case centers on DWAC's merger with Trump Media & Technology Group Corp. ("TMTG"). *See id.* ¶ 11. Plaintiff has provided a complaint filed by the SEC in this District—described in more detail below—in which the Commission described TMTG as "a Delaware corporation with its principal place of business in Sarasota, Florida . . . [that] operates a social media platform." Abraham Decl., Exh. A ("SEC Compl.") ¶ 24. On September 21, 2021, Garelick attended a DWAC board meeting during which the board "voted to negotiate a letter of intent with TMTG." Compl. ¶ 18. Garelick spoke by phone with Shvartsman after that meeting. *See id.* Orlando signed DWAC's letter of intent with TMTG the following day. *Id.* ¶ 20. Plaintiff further alleges that Garelick "learned that the deal with TMTG was moving forward towards closing" on September 29, 2021 and spoke with Shvartsman three times that day. *Id.* ¶ 21. Between October 1 and October 5, 2021, Shvartsman purchased approximately 2,227,915 DWAC warrants "through Rocket One." *Id.* ¶¶ 23-24.[3] On October 20, 2021, DWAC announced its merger with TMTG. *Id.* ¶ 27. Shvartsman, again allegedly "through Rocket One," sold all of his DWAC securities in the following two days and "realiz[ed] net profits of $18,269,042.98." *Id.*

---

[3] According to the Complaint, DWAC warrants started trading separately on NASDAQ on September 30, 2021. Compl. ¶ 22.

¶ 28. Garelick similarly sold all his DWAC securities the day after the merger announcement and "realiz[ed] net profits of at least $49,701.95." *Id.* ¶ 29.

**B.      Procedural History**

Plaintiff filed his Complaint on October 20, 2023, seeking disgorgement of short-swing profits from insider trading in DWAC securities pursuant to Section 16(b) of the Exchange Act. Dkt. 1. Rocket One, Shvartsman, and Garelick filed the instant motion on January 19, 2024. Dkts. 25, 26 ("Motion"). As alluded to above, the motion broadly speaking advances two theories in favor of dismissal and two theories in favor of transfer. All three of the aforementioned Defendants seek dismissal for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, alternatively, transfer of this case to the Southern District of Florida under either 28 U.S.C. § 1406(a)[4] or 28 U.S.C. § 1404(a). *Id.* at 1. Rocket One and Shvartsman additionally seek dismissal for failure to state a claim pursuant to Rule 12(b)(6). *Id.* Plaintiff filed his opposition to this motion on February 9, 2024, Dkt. 32, and these three Defendants filed their reply on February 16, 2024, Dkt. 34 ("Reply").

DWAC separately filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) on March 1, 2024. Dkts. 35-36. Plaintiff filed his opposition to DWAC's motion on March 15, 2024, Dkt. 37, and DWAC filed its reply on March 22, 2024, Dkt. 38. DWAC does not take a stance on the other Defendants' transfer motion.

---

[4] Section 1406(a) allows a court to, "in the interest of justice, order transfer of the action to another district where jurisdiction and venue properly obtain" in the event that a case was filed in an improper forum. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005). By contrast, and as further detailed below, Section 1404(a) allows transfer not "based on a forum's impropriety, . . . [but rather] on considerations of convenience." *Lehrer v. J&M Monitoring, Inc.*, No. 20 Civ. 6956 (KMK), 2022 WL 2392441, at *5 (S.D.N.Y. July 1, 2022) (internal quotation marks omitted).

It also bears mention that two other cases are pending in this District that appear to arise out of the same or similar facts. *See* Opposition at 2. The U.S. Attorney's Office for the Southern District of New York is prosecuting Garelick, Michael Shvartsman, and Gerald Shvartsman—who is Michael Shvartsman's brother—for securities fraud in a case before the Honorable Lewis J. Liman. *See United States v. Shvartsman*, No. 23 Cr. 307 (LJL) (S.D.N.Y.) ("DOJ Action"); *see also id.*, Dkt. 1 ¶ 7 (alleging in the original indictment in the DOJ Action that Gerald Shvartsman is Michael Shvartsman's brother); Abraham Decl., Exh. B ¶ 7 (same). Gerald Shvartsman and Michael Shvartsman each pleaded guilty to one count of securities fraud on April 3, 2024. *See* DOJ Action, April 3, 2024 Minute Entries; *id.*, Dkt. 81 at 13 (counts in the superseding indictment to which Gerald Shvartsman and Michael Shvartsman pleaded guilty). A jury convicted Garelick of one count of conspiracy to commit securities fraud and four counts of securities fraud on May 9, 2024. *See id.*, May 9, 2024 Minute Entry; *id.*, Dkt. 151 (trial indictment). The SEC separately sued Garelick, Michael Shvartsman, Gerald Shvartsman, and Rocket One for much the same conduct in a case pending before the Honorable Paul G. Gardephe. *See SEC v. Garelick*, No. 23 Civ. 5567 (PGG) (S.D.N.Y.) ("SEC Action"); SEC Compl. at ¶ 1. That case is currently stayed pending the DOJ Action. *See* SEC Action, Dkt. 54.

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also W.P.V. v. United States*, No. 21 Civ. 4436 (JPC), 2023 WL 1991426, at *3 (S.D.N.Y. Feb. 14, 2023). "Courts apply a two-part test to determine whether to grant a motion to transfer venue." *Glotser v. Boardwalk Regency LLC*, No. 20 Civ. 2654 (JPC), 2023 WL 2162063, at *3 (S.D.N.Y. Feb. 22,

2023) (internal quotation marks omitted). First, as a threshold inquiry, the court must decide whether "the transferee district" is "one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent." *Sentegra, LLC v. ASUS Computer Int'l*, No. 15 Civ. 3768 (GHW), 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016).

Once that requirement is established, courts turn to the question of "whether transfer is appropriate." *Burgos v. United States*, No. 16 Civ. 7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017) (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016)).

> In making that determination, the court should consider *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (internal quotation marks omitted). "Courts also frequently consider: (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Nosirrah Mgmt., LLC v. EVmo, Inc.*, No. 21 Civ. 10529 (AT), 2023 WL 35028, at *2 (S.D.N.Y. Jan. 4, 2023) (internal quotation marks omitted). The moving party must demonstrate that these factors militate towards transfer by clear and convincing evidence. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010); *see also W.P.V.*, 2023 WL 1991426, at *3.

Although the Court ultimately leaves the Rule 12(b)(6) motions for the transferee court to decide, some context regarding Section 16 of the Exchange Act is relevant in assessing the Section 1404(a) factors detailed above. Broadly speaking, "[t]o prevent insiders of a securities issuer from trading on material non-public information, Section 16(b) of the [Exchange Act] imposes strict liability on certain insiders of an issuer, requiring them to disgorge to the issuer any profits they

6

realize from short-swing trading in the issuer's securities." *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 543 (2d Cir. 2020); *see* 15 U.S.C. § 78p(b). "As defined by Section 16(b), short-swing trading is 'any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months . . . irrespective of any intention on the part of [the insider].'" *Rubenstein*, 959 F.3d at 543 (alterations in original) (quoting 15 U.S.C. § 78p(b)). "[L]iability under Section 16(b) . . . attaches when there was (1) a purchase and (2) a sale of securities (3) by a shareholder who owns more than 10 percent of any one class of the issuer's securities (4) within a six-month period." *Roth v. Goldman Sachs Grp.*, 740 F.3d 865, 869 (2d Cir. 2014) (internal quotation marks and alteration omitted). The provision "imposes a form of strict liability and requires insiders to disgorge these short-swing profits even if they did not trade on inside information or intend to profit on the basis of such information." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012) (internal quotation marks omitted).

### III. Discussion

As Plaintiff concedes, the first requirement of transfer under Section 1404(a) is satisfied. *See* Opposition at 13 n.6 ("Plaintiff agrees this case could have been brought in the Southern District of Florida."). As noted, "the transferee district" must be "one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent." *Sentegra*, 2016 WL 3093988, at *2. Pursuant to Section 27 of the Exchange Act, "[a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa(a). As previously noted, the Complaint alleges that Rocket One, Shvartsman, Garelick, and DWAC all reside or have their principal places of business in the Southern District of Florida. Compl. ¶¶ 3-6. Even if the Court were to credit

Plaintiff's argument that Garelick has since moved to Rhode Island, Plaintiff makes no argument that this ostensible fact would impact the first prong of the transfer analysis. *See* Opposition at 14.

The Court thus turns to the propriety of transfer.

**A.     Convenience to Witnesses**

"The convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (internal quotation marks omitted). "Because the 'core' inquiry under § 1404(a) is where the 'center of gravity of the litigation' is located, courts 'routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.'" *Ruiz ex rel. E.R. v. United States*, No. 13 Civ. 1241 (KAM), 2014 WL 4662241, at *11 (E.D.N.Y. Sept. 18, 2014) (quoting *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Freeplay Music*, 195 F. Supp. 3d at 617 (internal quotation marks omitted). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005); *see also Glotser*, 2023 WL 2162063, at *3.

Neither party submitted a list of likely witnesses. Plaintiff argues that an affidavit detailing potential principal witnesses expected to be called and the anticipated substance of their testimony "is a necessary part of a meritorious transfer motion." Opposition at 14. The Court disagrees. "[A] specific showing [of witnesses] is required only when the movant seeks a transfer solely 'on account of the convenience of witnesses.' However, if plaintiff seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." *Beckerman*

8

*v. Heiman*, No. 05 Civ. 5234 (BSJ) (GWG), 2006 WL 1663034, at *5 (S.D.N.Y. June 16, 2006) (cleaned up) (quoting in relevant part *Factors Etc., Inv. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on unrelated grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)); *see Marshall v. Annucci*, No. 16 Civ. 8622 (NSR), 2018 WL 1449522, at *12 (S.D.N.Y. Mar. 22, 2018) ("[A] failure to identify key witnesses may not be fatal to a motion for transfer where there are other grounds for a change of venue . . . ."). Given that Defendants seek transfer on multiple grounds, their failure to specify witnesses does not require denial of their motion.

Notwithstanding the absence of such a proffer, the face of the Complaint reveals that this witness convenience factor weighs moderately in favor of transfer. Logically, the parties to the transactions at issue are among the most important witnesses in a Section 16 case. *See Strauss v. West Highland Cap., Inc.*, No. 00 Civ. 1184 (GEL), 2000 WL 1505957, at *1 (S.D.N.Y. Oct. 6, 2000) (partly focusing on the fact that "all pertinent investment decisions were made in California by California residents" in a Section 16 case transferred to the Northern District of California). Here, that would include Garelick, Rocket One, and DWAC, although Plaintiff also notes the SEC's allegation that some of the brokers and counterparties for Garelick and Rocket One's trades were located in this District. *See* Opposition at 13 (citing SEC Compl. ¶ 11); *Nosirrah Mgmt.*, 2023 WL 35028, at *5.

Of course, this case features a slight wrinkle: Shvartsman pleaded guilty in the DOJ Action to one count of securities fraud on April 3, 2024, and Garelick was convicted at trial of one count of conspiracy to commit securities fraud and four counts of securities fraud on May 9, 2024. *See supra* I.B.[5]  Based on the public docket, both appear to be released on bail, with Garelick's

---

[5] "[D]ocket sheets are public records of which the court c[an] take judicial notice." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

9

sentencing scheduled for September 12, 2024, and Shvartsman's sentencing scheduled for September 19, 2024. *See* DOJ Action, May 9, 2024 Minute Entry; *id.*, Dkt. 178. While one would presume that these two individuals would be critical witnesses in this case, they may well be incarcerated in locations that have yet to be determined during much, if not all, of the period of discovery in this matter. Nevertheless, presumably other representatives of Rocket One and representatives of DWAC as the issuer in question also would be important witnesses as to the transactions. The Complaint alleges that both Rocket One and DWAC are headquartered in Miami. Compl. ¶¶ 3-4. As for non-party witnesses, Plaintiff points to the New York-based brokers, Opposition at 15, while Defendants state that TMTG may provide non-party witnesses that "would likely be in Florida" given that the corporation's principal place of business is located in Sarasota, Reply at 8 n.3.

Although the parties have made relatively meager proffers as to witness convenience, the Court concludes that the fact that both the issuer and at least one of the two buyers are Florida-based[6]—with the other also having been Florida-based at the time of the transactions, *see* Compl. ¶ 6—militates toward the conclusion that this factor weighs moderately in favor of transfer. While the Court cannot gainsay Plaintiff's concern regarding New York-based brokers, it remains the case that the transaction parties are likely to provide more material testimony than the brokers—who, after all, do not appear to have driven the investment decisions per the allegations in the Complaint.

---

[6] The Court also has some doubt that Garelick is now a resident of Rhode Island, rather than Florida, as Plaintiff contends. *See* Opposition at 14. Plaintiff bases this assertion on a December 22, 2023 declaration that Garelick filed in the DOJ Action, in which he stated in relevant part that "[i]n June 2022, federal agents came to my home in Providence, Rhode Island." Garelick Decl. ¶ 19. As Defendants point out, the fact that Garelick owns a home in Providence does not necessarily make him a Rhode Island resident nor does it mean that he no longer resides in Florida. *See* Reply at 7-8.

B.  **Convenience to the Parties**

"When analyzing the convenience of the parties, courts generally look to the parties' principal places of business, the location of their offices, or their residences." *Nuss v. Guardian Life Ins. Co. of Am.*, No. 20 Civ. 9189 (MKV), 2021 WL 1791593, at *5 (S.D.N.Y. May 5, 2021). This factor generally favors transfer "when transfer would increase convenience to the moving party without generally increasing inconvenience to the non-movant." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016). Ordinarily, the factor becomes neutral when transfer would merely shift the inconvenience from the movant to the non-movant. *See Glotser*, 2023 WL 2162063, at *5; *see also Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015).

The Court concludes that this factor is neutral because transfer shifts the inconvenience from Defendants to Plaintiff. Although Defendants are correct to point out that the Complaint neglects to mention Plaintiff's state of residence, Motion at 21, Plaintiff has since clarified that he resides in Queens, New York, *see* Lowinger Decl. ¶ 2. Therefore, even setting aside Plaintiff's contention that Garelick now resides in Rhode Island, shifting the venue of this action to the Southern District of Florida would have the effect of moving proceedings from Plaintiff's state of residence to that of at least almost all of the Defendants.[7]

---

[7] In challenging Defendants' argument that convenience of the parties favors transfer because of DWAC's connections to Florida, Plaintiff points to the Warrant Agreement between DWAC and Continental Stock Transfer & Trust Company. Opposition at 16 (citing Abraham Decl., Exh. G). The Warrant Agreement contains a forum selection clause providing that "any action, proceeding or claim against [DWAC] arising out of or relating in any way to this Agreement shall be brought and enforced in the courts of the State of New York or the United States District Court for the Southern District of New York." Abraham Decl., Exh. G § 9.3. Plaintiff contends that "[b]ecause the Rocket Defendants consented to those provisions when acquiring DWAC's warrants[,] their attempt to transfer should be viewed skeptically." Opposition at 16. But Plaintiff does not argue that this forum selection clause would somehow govern the instant dispute and require that it be brought in this District. *See* Opposition at 13 n.6 ("Plaintiff agrees that this case could have been brought in the Southern District of Florida."). Nor has

## C. Location of Relevant Documents

The location of relevant documents has become a largely neutral factor in the modern world of scanning and emailing documents of all sizes with ease. *See Monfried v. Sigma Fin. Corp.*, No. 15 Civ. 2806 (VSB), 2016 WL 9724977, at *4 (S.D.N.Y. June 14, 2016); *Barry v. United States*, No. 21 Civ. 7684 (BCM), 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022). Neither party has pointed to any specific document or piece of evidence in either the Southern District of New York or the Southern District of Florida. This factor is therefore neutral. *See W.P.V.*, 2023 WL 1991426, at *5.

## D. Locus of Operative Facts

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer," *Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, No. 21 Civ. 87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021) (internal quotation marks omitted), because "transfer to a district where the key operative events occurred serves the interests of justice," *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (internal quotation marks omitted). "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Guccione v. Harrah's Mktg. Servs. Corp.*, No. 06 Civ. 4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009) (internal quotation marks omitted).

Courts in this District have held that "the locus of operative facts for a claim under § 16(b) is the location in which 'facts peculiar to the transactions involved' occurred, such as the location

---

Plaintiff developed any meaningful argument about the effect of that clause on the analysis under Section 1404(a). *Cf. Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

12

where the stock at issue was purchased or where pertinent investment decisions were made." *Nosirrah Mgmt.*, 2023 WL 35028, at *3 (first quoting *Blau v. Lamb*, 191 F. Supp. 906, 906 (S.D.N.Y. 1961), then citing *Strauss*, 2000 WL 1505957, at *1). Plaintiff argues that the fact that at least some of the trades were executed on NASDAQ through New York-based brokers and with New York-based counterparties supports the conclusion that the locus of operative facts is the Southern District of New York. *See* Opposition at 13. Plaintiff also seizes on venue being proper in this District.[8] *See id.* However, as the court in *Nosirrah Management* noted, the Exchange Act's venue provision "is purposefully broad and allows for multiple proper venues." 2023 WL 35028, at *6. "It does not necessarily follow that New York is the locus of operative facts simply because venue is proper here." *Id.* And this Court does not hesitate to conclude that, as alleged in the Complaint, Florida was the locus of most of the "facts peculiar to the transactions involved." *Id.* (internal quotation marks omitted). After all, this case features two buyers who—at least at the time of the relevant transactions—resided in the Southern District of Florida, buying and selling securities of a corporation headquartered in that District and that was in the process of merging with a corporation headquartered in the same state. *See* SEC Compl. ¶ 24 (alleging that TMTG is headquartered in Sarasota, Florida). Even though Plaintiff now asserts in his briefing that various aspects of the transactions took place in this District, Plaintiff's decision to not mention these facts in his Complaint only underscores the point that the facts peculiar to the relevant transactions were

---

[8] Although Defendants argue that the Complaint as currently pleaded does not suffice to establish venue in this District, *see* Motion at 16-17, they do not appear to contest that venue in this District *could* have been sufficiently alleged, particularly had Plaintiff pleaded DWAC's trading on NASDAQ as the basis for venue, *see id.* at 17 n.5; Reply at 6-7. *See Avalon Holdings Corp. v. Gentile*, Nos. 18 Civ. 7291 (VSB), 18 Civ. 8896 (VSB), 2019 WL 4640206, at *4 (S.D.N.Y. Sept. 24, 2019) ("With respect to alleged violations of § 16(b) specifically, the Second Circuit has determined that an 'act or transaction constituting the violation' occurs in the district where the exchange on which the challenged purchases and/or sales were executed is located." (quoting 15 U.S.C. § 78aa and citing *Gratz v. Claughton*, 187 F.2d 46, 49 (2d Cir. 1951))).

not in this District. And while Plaintiff also casts doubt on the physical location of the parties at the time the transactions took place, noting the prevalence of remote working arrangements, *see* Opposition at 14, Defendants' arguments on this prong simply rely on the allegations that Plaintiff himself chose to include in the Complaint regarding the geographic locations of the parties, *see* Motion at 21.

This factor thus strongly militates in favor of transfer.

E.     **Availability of Process to Compel Attendance of Unwilling Witnesses**

The fifth factor "requires a consideration of the court's power to compel attendance of unwilling witnesses, as a district court only can subpoena witnesses within the district or within 100 miles of the [court]." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006); *accord* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ."). However, this factor is "generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Ruiz*, 2014 WL 4662241, at *11 (internal quotation marks omitted).

"[I]f the parties have not represented that any witness not residing in the transferor or transferee state would be unwilling to testify, then this factor is neutral." *Nosirrah Mgmt.*, 2023 WL 35028, at *3. While Plaintiff notes that a New York-based broker who executed the relevant trades could not be compelled to testify in the Southern District of Florida under the 100-mile rule, *see* Opposition at 16, the Court finds this factor neutral, given that neither party has identified any unwilling witnesses in this matter.

14

### F. Relative Means of the Parties

"Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue." *Aerotel*, 100 F. Supp. 2d at 197. Typically, "a party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances," *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (internal quotation marks and alteration omitted), which no party here has done. However, the Court may consider "the relative means of an individual plaintiff in contrast to a large company" in the transfer analysis. *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010); *see also Schwartz v. Marriott Hotel Servs., Inc.*, 186 F. Supp. 2d 245, 251 (E.D.N.Y. 2022) (similar). While Plaintiff could have so argued in this matter, the Court finds that this factor is neutral in the absence of any such argument. *See* Opposition at 16.

### G. Forum's Familiarity with the Governing Law

As previously noted, Plaintiff brings this action pursuant to the Exchange Act. While Plaintiff argues that this Court is more familiar with securities laws because the Second Circuit is "considered the 'mother court' for securities litigation," Opposition at 17, "federal courts are equally capable of deciding issues of federal law," *Placek v. Shopoff*, No. 18 Civ. 4326 (VEC), 2018 WL 4572253, at *8 (S.D.N.Y. Sept. 24, 2018). This factor is therefore neutral.

### H. Weight Accorded to Plaintiff's Choice of Forum

"Plaintiff's choice of forum is ordinarily 'a decision that is given great weight.'" *Tan v. Shein Distribution Corp.*, No. 23 Civ. 8469 (LGS), 2024 WL 165196, at *2 (S.D.N.Y. Jan. 16, 2024) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006)). "However, a plaintiff's choice of forum is accorded substantially less deference when the forum is neither the

plaintiff's home nor the place where the operative facts of the action occurred." *Id.* (internal quotation marks omitted).

Plaintiff is a resident of Queens, located in the Eastern District of New York, and thus chose to file this action outside his home District. As discussed above, most of the operative facts in this matter—the facts peculiar to the transactions at hand—appear to have taken place in Florida, per the allegations in the Complaint. *See supra* III.D. Plaintiff's choice of forum is thus entitled to less deference. *See O'Connor v. Long Island R.R.*, No. 22 Civ. 6908 (JLR), 2022 WL 17363932, at *1 (S.D.N.Y. Dec. 1, 2022) ("Plaintiff resides and worked in the Eastern District of New York. Therefore, Plaintiff's choice of forum in the Southern District is afforded less weight because Plaintiff does not reside here.").

Plaintiff's arguments to the contrary are unavailing. He contends that his choice of forum is entitled to substantial deference because he "initiated this lawsuit in this District which is a convenient forum to 'obtain jurisdiction over defendant.'" Opposition at 18 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003)). To the extent that Plaintiff made this point to argue that he filed this action in the Southern District of New York to exercise personal jurisdiction over Defendants, that is not a basis to avoid transfer. The reasoning in *Pollux Holding* to which Plaintiff cites concerned scenarios in which a plaintiff chooses to litigate in the defendant's home forum in recognition of "the need to sue in a place where the defendant is amenable to suit." 329 F.3d at 74 (internal quotation marks omitted). But that logic is not relevant to the transfer motion at hand, particularly because of Plaintiff's concession that this action could have been brought in the Southern District of Florida for purposes of the first prong of the Section 1404(a) analysis. Given that this prong necessitates that "[t]he transferee district . . . [be] one where jurisdiction over the defendant could have been obtained at the time

16

suit was brought, regardless of defendant's consent," *Penrose v. New York Life Ins. Co.*, No. 22 Civ. 2184 (JPC), 2023 WL 6198249, at *3 (S.D.N.Y. Sept. 22, 2023) (internal quotation marks omitted), Plaintiff's concession necessarily assumed that the Southern District of Florida is a forum where Defendants are "amenable to suit," *Pollux Holding*, 329 F.3d at 74 (internal quotation marks omitted).[9]

For these reasons, Plaintiff's choice of forum in this District is entitled to little weight.

I.  **Trial Efficiency and the Interests of Justice**

This case is still in its early stages. No formal discovery has occurred and Defendants have not answered, although they have filed dispositive motions. Given this procedural posture, transferring the case would not cause any prejudice to Plaintiff or harm judicial economy. *See Frame v. Whole Foods Mkt. Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *7 (S.D.N.Y. Sept. 24, 2007); *see also W.P.V.*, 2023 WL 1991426, at *8; *Barry*, 2022 WL 4467504, at *8.[10]

\* \* \*

---

[9] Plaintiff also objects to Defendants' argument that his choice of forum is entitled to less deference "in a derivative action because the plaintiff is only one of many potential plaintiffs with equal show of right, and the real party in interest is the issuer of securities on whose behalf the plaintiff brings suit." *Nosirrah Mgmt.*, 2023 WL 35028, at *3; *see* Motion at 20. Plaintiff is correct that the "equal show of right" logic is likely weakened by the fact that any other potential Section 16(b) plaintiff would have to clear statute of limitations-related hurdles at this point. *See* Opposition at 18. It is also true that Section 16(b) actions are not entirely equivalent to derivative actions. *See Chechele v. Elsztain*, No. 11 Civ. 3320 (SAS), 2012 WL 12358221, at *2 (S.D.N.Y. Aug. 1, 2012). Nevertheless, the Court finds for the reasons discussed above that Plaintiff's choice of forum is not entitled to significant weight in any case.

[10] Plaintiff contends that "this District is more convenient to the extent any coordination with the SEC Action or DOJ Action proves necessary or advisable." Opposition at 19. While courts have transferred cases to consolidate putative securities class actions, the Court is skeptical of the proposition that the same logic applies for private actions and governmental enforcement actions. *See Woldanski v. TuSimple Holdings, Inc.*, No. 22 Civ. 9625 (AKH), 2023 WL 1795191, at *3 (S.D.N.Y. Feb. 7, 2023).

In sum, most of the factors either favor transfer or are neutral, with the most important factor of witness convenience favoring transfer, the locus of operative facts strongly favoring transfer, and Plaintiff's choice of forum entitled to less deference. As such, the Court finds that transfer to the Southern District of Florida is appropriate under 28 U.S.C. § 1404(a).

### IV. Conclusion

For the foregoing reasons, the motion of Defendants Rocket One Capital, LLC, Michael Shvartsman, and Bruce Garelick to transfer this case to the Southern District of Florida pursuant to Section 1404(a) is granted. Because this case should be heard in another District, the Court does not reach the merits of Defendants' arguments in support of dismissal. *See Sheree Cosmetics, LLC v. Kylie Cosmetics, LLC*, No. 18 Civ. 9673 (VEC), 2019 WL 3252752, at *4 (S.D.N.Y. July 19, 2019). The motions to dismiss for failure to state a claim will remain pending for consideration by the transferee court. Defendants' motion to transfer pursuant to Section 1406(a) and motion to dismiss for lack of venue are denied as moot. The Clerk of Court is respectfully directed to close the motion at Docket Number 25, to amend the caption of this case to change Defendant "Bruce Garelik" to Defendant "Bruce Garelick," and to transfer this case to the Southern District of Florida.

SO ORDERED.

Dated: June 5, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge

18